GOLDIE S. ROBBINS, PLAINTIFF-RESPONDENT, v. JAMES C. B. MILLARD, AS EXECUTOR OF THE ESTATE OF JAY GOULD, DECEASED, DEFENDANT-APPELLANT.

Argued February 5, 1936—Decided April 25, 1946.

For the appellant, *George W. C. McCarter.*

For the respondent, *Irving L. Rubin.*

The opinion of the court was delivered by

DONGES, J.   This appeal brings up a judgment of the Supreme Court in favor of plaintiff and against defendant, after the direction of a verdict for plaintiff at a trial in the Passaic Circuit.

Plaintiff-respondent sued as assignee of Henri Bendel, Inc., to recover upon a book account for goods sold on the order of Jay Gould, deceased. Appellant is executor of Gould's estate. The claim and the judgment are for the exact amount of interest charged against the account after the death of Gould, plus interest on that amount from May 1st, 1938, to the time of trial. The interest claimed in the complaint was calculated over the entire life of the account but not entered in the account or demanded until over two years after the death of the debtor.

It appears Gould had a running account with Bendel, Inc., as evidenced by *Exhibit P-3.* This account shows the first entry as June 14th, 1932, and the last entry prior to testator's death on January 26th, 1935, for goods sold was on the 6th of July, 1932. The account, as appears from *Exhibit P-3,* was listed as follows:

"Absolutely No Bills to go out on this Account. Give Bills to Mr. Haggerty.

Name    Gould Mr. Jay (Do not confuse with Mrs.)

Address    Hotel Elysee 54th St., City.

Remarks    For Miss S. Parrish Reigler."

It appears that purchases were made and charged to Gould's account from time to time for women's clothing, the articles being purchased by someone other than Mrs. Gould. The charges were made and, from time to time, payments were made on account, and, at the time of Gould's death, there was a balance on account of merchandise sales of $3,201.04. The plaintiff's exhibits show that, on or about July 6th, 1932, when the last purchase on this account was made, the amount debited was $6,570.50. On December 6th, 1932, a credit of $1,000 cash reduced the account to $5,570.50. On May 20th, 1933, there is a credit of "By cash $2,500," which reduced the amount carried as due from Gould to $3,070.50. Gould died on January 26th, 1935, and on June 20th, 1935, the account shows as follows: "Trans. from Mrs. Jay Gould," debits in the sum of $130.54, and that the balance due was $3,201.04, being the amount of balance of $3,070.50 of Gould's account and of $130.54 transferred from Mrs. Gould's account. The first entry of interest is as of September 28th, 1937, more than two years after Gould's death.

Under date of April 23d, 1935, three months after Gould's death, Henri Bendel, Inc., presented to the defendant-appellant, Millard, as executor, a verified statement of the account and claim in the sum of $3,201.54, and T. J. Haggerty, as "Comptroller for Henri Bendel, Inc.," made an affidavit that the "estate is indebted in the sum of three thousand two hundred and one and 04/100 dollars." This claim showed the amount originally due as $6,701.04, being the amount of purchases charged to Gould and the subsequent addition of the amount due on Mrs. Gould's account, and the cash payments by Gould of $1,000 on December 12th, 1932, and $2,500 on May 20th, 1933, and that the balance due was $3,201.04.

It is apparent that the only question is as to the allowance of interest on the account as claimed by plaintiff. At the trial, plaintiff produced witnesses who testified as to the manner of conducting this account. By the testimony of Gertrude Greidenberg it appears that bills were not sent to Mr. Gould, but were handed to Mr. Haggerty, the comptroller, and there is no proof that bills were sent to Gould from month to month, or at any time. The notation on the account was that "No Bills to go out on this Account." This is important because plaintiff relied upon the testimony of a New York lawyer, who testified that, under the law of that state, interest became due upon open balances as follows: "Interest begins to run on an indebtedness in the State of New York from the date when a bill is rendered for the principal amount. In other words, if I received a bill from a creditor of mine on January 1st, 1941, and if it was a liquidated amount, interest automatically begins to run from January 1st, 1941."

"By the court: *Q.* Let me just ask you a question: When does it run on an open account?

"*A.* Interest runs even on an open account from the date of the rendition of the bills. Of course, many times the stores or creditors don't require payment of interest, or they may waive the payment of interest by accepting merely principal, but, as a matter of law, interest is an incident to the payment of principal. * * *."

The record is lacking proof of the submission of bills to the debtor, Gould. The proof is that they were given to Haggerty, the comptroller of Bendel. Miss Greidenberg, head bookkeeper for Bendel, testified that the system was changed in 1935 and that thereafter bills were sent to Gould. But Gould died in January, 1935, and in April, 1935, a statement claiming $3,201.54 was sent to the executor of his estate.

Under the undisputed facts, therefore, it appears that interest would run only from the time of the presentation of the claim to Millard, the executor. The fact that no interest was added to the account until September, 1937, and that none was included in the verified claim submitted to the executor is evidence that none was claimed and that all interest prior to the presentation of the claim was waived.

The judgment under review is reversed, and a *venire de novo* will issue. Costs to abide the event.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, COLIE, OLIPHANT, WELLS, RAFFERTY, DILL, FREUND, MCGEEHAN, JJ. 14.